BEN MELTON V. THE STATE.

No. 17006. Delivered December 12, 1934.
Reported in 77 S. W. (2d) 243.

The opinion states the case.

*Baker & Baker* and *Critz & Woodward,* all of Coleman, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE. Appellant was convicted of being an accomplice to the offense of theft, and his punishment fixed at confinement in the penitentiary for three years.

The opinion on a former appeal is found in 58 S. W. (2d) at page 103.

According to the testimony of W. G. Carriger, the alleged principal offender, appellant was not present when the offense was committed, but had theretofore advised and commanded the witness to steal 1000 feet of 10 inch pipe from Joe McIntosh, the alleged owner. W. G. Carriger's testimony was in substance as follows: On the night of May 21, 1931, accompanied by Fred Carriger, his brother, one Blackie, and Dee Satterwhite, he stole the pipe in question and hauled it in appellant's trucks to the city of Dallas, where he and his companions met appellant. Upon appellant's suggestion the trucks were parked until the following morning, at which time the pipe was unloaded at the place of business of the Standard Pipe and Supply Company of Dallas. Max Jaffe, acting for the company, gave the witness a check for $700, payable to W. E. Carter, which check the witness and appellant carried to a bank and cashed. The witness did not know whether he or appellant indorsed the name of W.

E. Carter on the check. Appellant received all of the proceeds of the sale. Prior to going to Callahan County and stealing the pipe, the witness had been in Longview, Texas, operating trucks for appellant. After receiving a telephone call from Melton Thomas, appellant's nephew, advising him to meet appellant at the Hilton Hotel, he had come to Dallas with appellant's trucks. On the occasion of their meeting at the Hilton Hotel appellant advised and commanded him to steal the pipe in question.

Joe McIntosh testified that the pipe was stolen from him. He did not know who committed the offense. It was not shown that he recovered his property. Virgil Carriger testified that he saw appellant and W. G. Carriger together in Dallas near the Hilton Hotel about the date of the alleged theft; that he carried said parties to the vicinity of a pipe yard on two occasions; that he did not know what they were doing; that later he took a trip with appellant and W. G. Carriger and heard the latter ask appellant for some money; that appellant said he did not have any money to spare. The State introduced in evidence two telegrams sent from Coleman to Dallas, which were addressed to appellant, care Hilton Hotel. Both of these telegrams were sent by Melton Thomas, appellant's nephew, but they were not shown to have been received by appellant. The first one was dated May 20, 1931, before the alleged theft of the pipe, and contained the following statement: "Chuck leaving at nine for Dallas. Meet him tonight at Hilton." Dee Satterwhite, an accomplice witness, testified that W. G. Carriger was commonly called Chuck. The second telegram was dated May 22, 1931, after the alleged theft, and addressed to appellant, care Hilton Hotel, Dallas, Texas. It contained this statement: "Everything all right here. I will meet you at Hilton five today." Again, the State introduced in evidence a telephone charge ticket dated May 20, 1931, indicating that Melton Thomas, appellant's nephew, put in a call from Coleman to Walter Carriger at Longview. The State introduced the register of the Hilton Hotel to show that appellant was in Dallas at said hotel on the dates testified to by W. G. Carriger. Fred Carriger, a brother of W. G. Carriger, testified that he went with his brother to the scene of the theft in one of appellant's trucks and helped bring the pipe in question to the city of Dallas; that he did not know the pipe was being stolen; that prior to the alleged theft he saw appellant and W. G. Carriger together at the Hilton Hotel in Dallas; that in removing the pipe he and his companions reached Dallas late in the evening and parked their trucks at different places in the city; that the following morning appellant

went with the witness to the trucks; that the witness then drove his truck to a pipe yard, where he unloaded it; that he saw appellant around the yard about the time he, the witness, was leaving; that his brother, W. G. Carriger, had employed him to go to Callahan County on the occasion in question.

The court instructed the jury that W. G. Carriger was an accomplice witness as a matter of law, and submitted to the jury the issue as to whether the witness Fred Carriger was in the same category. Appellant excepted to the charge of the court for its failure to instruct the jury to acquit him if it was determined that the witness last mentioned was an accomplice. This exception was predicated upon the theory that there was no evidence sufficient to corroborate the accomplice witness W. G. Carriger other than the testimony of Fred Carriger. We think the exception was well taken. Fred Carriger alone corroborated the statement of W. G. Carriger that the trucks used in committing the offense belonged to appellant. If the testimony of Fred Carriger and W. G. Carriger be eliminated there remains the following: Melton Thomas, appellant's nephew, put in a call to Longview for W. G. Carriger a day or two before the alleged theft. About the date of the alleged theft appellant and W. G. Carriger were together near the Hilton Hotel and on two occasions went to the vicinity of a pipe yard in the city of Dallas. Melton Thomas addressed the telegrams we have heretofore mentioned to appellant at the Hilton Hotel in Dallas. Appellant was registered at the Hilton Hotel. Max Jaffe executed a check in the sum of $700 payable to W. E. Carter, dated May 25, 1931. Aside from the testimony of Fred Carriger, we deem the circumstances insufficient to corroborate the accomplice witness W. G. Carriger either as to the theft of the pipe or as to the advice and command by appellant to commit the offense. Where a party is charged as an accomplice to a crime and the State relies upon the testimony of the accomplice witness, the testimony must not only be corroborated as to the fact that the offense was committed, but must be corroborated with equal cogency to the fact that the party accused as an accomplice brought himself within the purview of the statute in his advice or assistance. Jordan v. State, 57 S. W. (2d) 127. The jury might have decided that the witness Fred Carriger was an accomplice and yet have reached the conclusion that the circumstances to which we have referred were sufficient corroboration. Hence in the absence of an instruction that an acquittal should follow if the conclusion should be reached that the wit-

ness mentioned was an accomplice, appellant's rights were not adequately protected. See Ball v. State, 39 S. W. (2d) 619.

For the error discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.