Frank Edward **JACKSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 46298.

Court of Criminal Appeals of Texas.

May 23, 1973.

Mickey Wade, Belton, for appellant.

Stanley Kacir, Dist. Atty., Jerry Secrest, Asst. Dist. Atty., Belton, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for sale of hashish. Punishment was assessed by the jury at seven years.

At the outset, appellant contends the court erred in allowing an in-court identification of appellant by narcotic agent

Harden because the viewing of a photograph by Harden before the arrest of appellant was impermissibly suggestive and created a likelihood of irreparable misidentification.

J. P. Harden, a narcotic agent for the Texas Department of Public Safety, testified that while he was working undercover in Temple, on September 5, 1971, the following occurred:

"I was in the Regal Cafe. While in there the Defendant in this case approached me. I knew him already. When he approached me, he said, do you want some more hash? I said, how much do you have? He said, I have all you want. I said, okay, well, I will take another ten dollar bag. At this time he said okay and he reached in his pocket and pulled out a plastic bag containing a green plant substance, which appeared to be hash, and handed it to me, and then he said, that will be ten dollars. I said okay, and I handed him ten dollars."

On direct examination, Harden positively identified appellant as the person from whom he purchased hashish on the occasion in question. On cross-examination, Harden testified that he had also identified appellant by a photograph that was made available to him. Harden further stated that he had seen appellant several times and related conversations he had with appellant prior to his arrest. In response to a question on redirect examination, Harden stated that he would be able to positively identify appellant as the person who had sold him the drugs at the time in question if he had never viewed the photograph.

In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), it was stated: ". . . we hold that each case must be considered on its own facts, and that convictions based on eye-witness identification at trial following a pre-trial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

■ The witness stated that he had seen appellant several times while he was working undercover in Temple and related conversations had with appellant. Appellant, testifying in his own behalf, stated that he had seen Harden on two previous occasions. Harden explained the only purpose in looking at appellant's photograph was to learn his true identity and address. The record before us furnishes clear and convincing proof that the in-court identification was of an origin independent of the viewing of appellant's photograph. See Daniels v. State, Tex.Cr.App., 464 S.W.2d 368.

No error is shown.

■ Appellant next contends that the court erred in overruling his objections to various portions of the testimony of Harden, and in failing to instruct the jury properly as to Harden's testimony, and in failing to grant a mistrial in connection therewith. Appellant does not set forth or identify the testimony, the rulings of the court, the instructions or requests therefor, or the reasons why he contends mistrial should have been granted in this multifarious ground of error. In appellant's brief, reference is made to "Record pp. 31, 33, 38, 47–48," and the conclusion is drawn that the cumulative effect of the testimony and conduct of the witness constitutes a violation of due process, and that the same could not have been cured by instruction of the court and, therefore, the case should be reversed. We are unable to understand the exact nature of appellant's contention. The mere reference to pages of the record does not sufficiently identify the complained of testimony and rulings of the court and does not constitute a ground of error, as required by Article 40.09, Sec. 9, Vernon's Ann.C.C.P.; Dominquez v. State, Tex.Cr.App., 459 S.W.2d 628.

Appellant contends that a variance exists between the offense charged in the indictment and the offense proved.

Appellant argues that, while the indictment charges appellant with the sale of hashish, the State's proof indicates that the substance sold was marihuana and points to the testimony of Chemist Browne, in which he testified that he had made no attempt to determine, chemically, whether the plant admitted into evidence derived from the cannabis hashish plant, or the cannabis sativa plant. The testimony of George E. Browne, chemist and toxicologist for the Department of Public Safety, reflects the following:

"Q. . . . Now, Mr. Browne, state whether or not in your opinion as an expert in this matter the substance in State's Exhibit number two is marihuana or hashish?

"A. Yes, Sir. It is 1.13 grams of marihuana substance normally referred to as hashish in this form.

"Q. Okay, Mr. Browne, and for the jury's information would you explain briefly the correlation between hashish and marihuana?

"A. Yes, sir. Actually it goes by two things. One is the plant and number two is the form. To start off with there is a plant that we normally refer to as marihuana and generically it is known as cannabis sativa. Then in India and in Southeast Asia there is another plant which is grown called cannabis hashish. They are both cannabis plants. . . . Now, if hashish is gotten from the real hashish plant there are several ways of doing it, but the most common way would be to actually beat it, and that is to take a hammer and beat the flowering tops and leaves and get a gummy rosin and this is put into a club or concentrated and it has quite a bit of THC in it, which is tetrahydral cannabal. Then another type of hashish that we see, and for a slang term we normally refer to it as hippy-hash and this is where they actually take marihuana, what is referred to as the dubes or the cigarette butts, or sometimes the stalks, and sometimes the leaves and the flowering tops themselves and actually grind it up real fine like a powder, like this is here, and then to actually compress it or make a plug out of it, or a solid chunk."

On cross-examination of Browne, the following testimony was elicited:

"Q. . . . Well, is this from the hashish plant or from the sativa plant, or do you know?

"A. No, sir, there is no way to determine that without having the morophlogical (sic) plant there. That is a ground cannabis substance containing the THC and I would say it is a marihuana substance that is commonly referred to as hashish by its form.

"Q. And by commonly referred to, that is because of the way it is crushed up?

"A. Right, by the form that it is in, yes.

* * * * * *

"Q. Chemically though you could say that this does not come from the hashish plant and therefore would it still be considered to be hashish chemically, and this is since it does not come from the hashish plant in India?

"A. Since there is no real definition, yes, and here again from the form. I would refer to it by the form as hashish."

We find that the foregoing testimony of the witness Browne constituted sufficient proof that the substance in question was hashish and reject appellant's conten-

tion that a variance exists between the offense charged and the offense proved.

The judgment is affirmed.

Opinion approved by the Court.