James Earl ARIVETTE, Appellant,

v.

The STATE of Texas, Appellee.

No. 48546.

Court of Criminal Appeals of Texas.

Sept. 18, 1974.

Rehearing Denied Oct. 9, 1974.

John J. Brown, Houston (Court-Appointed), for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Warren White, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

REYNOLDS, Commissioner.

Under the court approved reduction of the indicted offense of robbery by assault with a firearm, appellant was tried for and convicted of robbery by assault. The jury assessed punishment at confinement for one hundred (100) years.

Appellant's twenty-one grounds of error are positioned correlatively to a statement of the case detailing the sequential events of five days beginning July 10, 1969, during which there was described the appellant's complicity in several offenses, including the robbery by assault for which he was convicted, the evidence supporting which is not directly challenged. The description was permitted under the trial court's ruling that the State would be allowed "to prove the main issue and that is the robbery by assault as well as malice, intent and motive and anything involved in the flight . . . while the two complaining witnesses are in captivity," although the court denied the State's offer to show that appellant subsequently escaped from the Harris County jail. The narration is from the evidence produced by the State; appellant did not testify nor call any witnesses in his behalf.

During the afternoon of July 10, 1969, appellant and his fourteen year old stepbrother, Larry Foster, discussed getting some easy money, kidnapping someone and leaving the State. After purchasing two pistols by giving a check for which the vendor received no money, appellant, accompanied by Foster and a thirteen year old girl, Cathleen Callier, went to the Pasadena home of complainant Floy Chambers Sackett.

Appellant was admitted to the home by complainant's twelve year old daughter on his pretext of calling about an automobile Mrs. Sackett had for sale. Appellant shoved a pistol under the complainant's chin and said, "Don't scream or I will blow your brains out and I mean every word I say." Appellant placed her on the bed, and bound her hands and disrobed her. He said he wanted her money and her car, stating that he had beaten some man and had literally cut him to bits and taken what money he had. He also told complainant that there was a gun on her daughter, who was in another room with appellant's companions. Unable to accomplish an unnatural sex act, appellant untied the complainant and, while she was dressing, he took $115 from her purse on the dining room table. All during this confrontation and the sequential events terminating on the fourth day thereafter with appellant's capture and the freeing of complainant and her daughter, the complainant was in fear for her life and that of her daughter or of serious bodily injury either to herself or to both of them.

Appellant forced the complainant and her daughter to leave with him and his two companions. With the complainant driving her car at appellant's direction, the five persons drove to Eagle Lake, where they spent the night in one motel room. That night, appellant raped the complainant.

The following day they drove to and spent the night in Carlsbad, New Mexico. Appellant was particularly interested in the television news to ascertain if they had been reported missing. That evening appellant beat Cathleen Callier as a result of which both of her eyes were badly bruised and blackened.

The next day, July 12th, they drove to Silverton, Colorado, where they stayed that night. During this trip, appellant and Foster played tic-tac-toe with a knife on Cathleen Callier's left thigh, leaving marks discernible two days later.

On the following day, their travels took them to the Battle Mountain Lodge in Wyoming, where they spent the night, and on the next day, July 14th, they went to Idaho. Appellant decided to return to the Battle Mountain Lodge.

Arriving at the lodge, appellant and Foster robbed the owners of the lodge, holding them and others present captive. Appellant announced to the assemblage that he had abducted complainant and her daughter at gunpoint and brought them all the way to Wyoming; that he would use his gun on the wife of the lodge owner; that he could kill all of them and if he killed one, he might as well kill all; that "he didn't intend to leave there alive"; and

"he went on to tell us about the times he had done in the different Penitentiaries."

During that evening on July 14th, Foster shot Cathleen Callier five times, apparently killing her. Her body was taken outside the lodge where appellant shot her in the head.

Later that evening, Wyoming police officers arrived and surrounded the lodge. Following gunfire, appellant and Foster threw out their guns and surrendered. It was then discovered that a police officer had been shot and killed during the shooting.

During the entire episode, complainant either had no chance to escape or she was deterred from attempting escape by the threats made by appellant to her or about her daughter. She feared that appellant would fulfill those threats. When she was not in appellant's immediate presence, her daughter was kept as a hostage.

■ Appellant's twentieth ground that the denial of a speedy trial entitled him to a dismissal of the charge arrives without the development of proof to sustain his allegation. Indeed, in lieu of developing the matter, appellant's counsel stated to the trial court at the presentation of the motion to dismiss for failure to grant a speedy trial, "[w]e will just let the Court overrule that." Nonetheless, the motion allegations projected against the record do not support appellant's contention that his Sixth Amendment constitutional right was violated.

Appellant was taken into custody by Wyoming officers on July 14, 1969. The charge out of which this Texas prosecution grew was lodged against appellant on January 4, 1971, in the Justice of the Peace Court, Precinct No. 2 of Harris County, and a detainer was placed on appellant, who then was incarcerated in the Wyoming penitentiary. The indictment was presented January 25, 1971. On February 2, 1971, appellant executed his motion for a speedy trial, stating he would waive extradition if the Wyoming authorities would release him.

Appellant was returned to Harris County on March 8, 1971, and, on March 12, 1971, appellant declined the speedy trial offered him by moving for a continuance, which was granted. Thereafter in 1971, the case was passed or continued six more times, twice at appellant's request and four times without assignment of a specific reason, although it appears two of these delays were occasioned by appointment of counsel for appellant. In 1972, two previously set trial dates were vacated, once on appellant's motion and once when counsel was again appointed for appellant, and trial was set for February 19, 1973. Just before this trial date co-counsel was appointed for appellant, and the case was reset for trial on April 3, 1973, the date the trial actually began. Prior thereto on March 16, 1973, appellant filed his motion of dismissal for failure to grant him a speedy trial, and this is the motion presented to "let the Court overrule that."

Appellant insists that his motion based on the four factors of (1) length of delay; (2) reason for the delay; (3) his assertion of his right; and (4) prejudice to him, considered in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), established a prima facie denial to him of a speedy trial since the State did not controvert his allegations of applicability of these factors to show his constitutional right was violated. Barker, however, is not so definite. There, it was announced that although these four are some of the factors to be considered, they have no talismanic qualities, and the courts must still engage in a sensitive balancing process on an ad hoc basis. See also Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973).

Previously, these four factors have been considered at length by this court,[1] and it

1. See, e. g., Black v. State, 505 S.W.2d 821 (Tex.Cr.App.1974); McKinney v. State, 505 S.W.2d 536 (Tex.Cr.App.1974); Turner v. State, 504 S.W.2d 843 (Tex.Cr.App.1974);

would be superfluous to again discuss the rationale of applicability. Suffice it to state that, applied to the existent facts of this case, none of the factors affords appellant the relief he seeks.

■ The length of delay is measured from the time the defendant is accused. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The length of delay here—twenty-seven months from the original accusation on January 4, 1971 (and less from the indictment) to the trial on April 3, 1973—is not, per se, a denial of a speedy trial. McCarty v. State, 498 S.W.2d 212 (Tex.Cr.App.1973).

The reason for the delay is not alleged to be, and the record will not support a claim of, any deliberate attempt by the State to delay the trial; rather, the record reflects that, except for appellant's resistance, the State would have accommodated him with a speedy trial. Following appellant's February 2, 1971 motion for a speedy trial—a month after he was formally accused and some eight days after his indictment—and his return to Harris County on March 8, 1971, appellant refused a speedy trial on March 12, 1971. Instead, his motion for continuance was granted, as were his other motions for continuance, two of which were made that year and one of which was presented in 1972. At least three continuances were granted for the benefit of appellant's counsel. The record does not show that any continuance was granted at the request of the State.

As to the assertion of his right to a speedy trial, appellant early did make such an assertion, but he thereafter declined the offers of a speedy trial. Obviously, he took no action to press his initial application for a speedy trial.

■ The prejudice resulting is alleged in appellant's motion to dismiss to be his

lengthy incarceration and that certain witnesses have died and disappeared which adversely affected his ability to defend himself. As noted earlier, there was no development of evidence to support the motion; its bare assertions are merely stated. There is, for example, no enlightenment in the record on the State's proposal, which the court denied, to show that appellant's jail incarceration was interrupted by his escape; but, more important, there is no identification of appellant's missing witnesses and there is no showing what their testimony would have been. While "actual prejudice" is not required to be shown, the appellant is required to make some showing of prejudice caused by the complained of delay. Harris v. State, 489 S.W.2d 303 (Tex.Cr.App.1973). When non-availability of witnesses is claimed as prejudice, due diligence to locate them and the relevance and materiality of their testimony to the defense must be shown. McCarty v. State, supra.

After considering all the factors, including the strength of the State's case, and applying the balancing test of Barker v. Wingo, supra, we conclude that there was no denial of appellant's right to a speedy trial. Ground number twenty is overruled.

The nineteenth ground is that the court erred in failing, after objection, to charge the jury as to the offense of, and to apply the law concerning theft. No authority is cited to support the argument that the facts show a theft since the money was removed from the complainant's bag while it was not in her personal possession and she was not aware that the money was taken until she was told it was an accomplished fact.

■ Robbery and theft are closely related, the actual or threatened violence to the person antecedent to the robbery being a distinguishing element. Reese v. State, 91

McCarty v. State, 498 S.W.2d 212 (Tex.Cr. App.1973); Haas v. State, 498 S.W.2d 206 (Tex.Cr.App.1973); George v. State, 498 S.W.2d 202 (Tex.Cr.App.1973); Harris v.

State, 489 S.W.2d 303 (Tex.Cr.App.1973). Cf. also, Courtney v. State, 472 S.W.2d 151 (Tex.Cr.App.1971).

Tex.Cr.R. 457, 239 S.W. 619 (1922). In the case at bar, actual violence had been done to the complainant and additional violence was threatened prior to the time her money was taken, and she said she would not have given up the money but for being in fear of her life. The fact that the money was not taken from her person does not make the crime one of theft; rather, under the circumstances shown, the crime was robbery by assault. Cf. Rayford v. State, 423 S.W.2d 300 (Tex.Cr.App.1968). The nineteenth ground is overruled.

In grounds two through eleven, inclusive, appellant complains of the admission of testimony of the previously mentioned extraneous offenses committed during his flight. Using for his summation the statement from the dissenting opinion in Woods v. State, 480 S.W.2d 664, 668 (Tex.Cr.App.1972), that "flight should not be used merely as a vehicle to show proof of independent crimes when it tends to shed no light on any disputed issue in the case," appellant argues that the in-flight extraneous offenses did not tend to prove any material fact of the offense charged, but they resulted in his being tried as a criminal generally.

■ Of course, crimes collateral to the accusation made may not be shown for the purpose of branding the accused as a criminal generally; nevertheless, there are exceptions to this general rule. Jones v. State, 481 S.W.2d 900 (Tex.Cr.App.1972). Evidence of the necessarily related circumstances of the accused's direct flight to escape the immediate consequences of his act may justify one exception to the rule. While flight itself does not amount to a presumption of guilt, it is a circumstance from which an inference of guilt may be drawn. Ysasaga v. State, 444 S.W.2d 305 (Tex.Cr.App.1969). Consequently, evidence of flight is always admissible if it shows the act of running away. Jones v. State, supra. And the fact that the descriptive circumstances of such flight show the commission of other crimes does not render the evidence per se inadmissible, Thames v. State, 453 S.W.2d 495 (Tex.Cr.App.1970); but, in fact, such crimes may be shown if they are necessarily related circumstances of the proof of the flight of the accused. Martinez v. State, 140 Tex.Cr.R. 159, 140 S.W.2d 187, 153 S.W.2d 721 (1940). This exception is particularly applicable when the assault antecedent to the robbery is continuous and so interwoven with other offenses as to be a part of the same transaction, Cavett v. State, 505 S.W.2d 289 (Tex.Cr.App.1974), even though the other offenses were committed at different locations on subsequent dates. Thames v. State, supra; Smallwood v. State, 464 S.W.2d 846 (Tex.Cr.App.1971).

■ The evidence of appellant's flight to escape the immediate consequences of his robbery is but the unfolding, from alpha to omega, of his announced plan to get some easy money, kidnap someone and leave the State. The robbery of complainant was accomplished by an assault which, as devised and executed by appellant, was continuous to the moment of his capture and complainant's release, and it was so interwoven and blended with the facts which of themselves constituted other crimes and were so necessarily related to the flight as to be an integral part of appellant's declared plan. Each collateral offense, then, is a detail concerning, and in reality forms a part of, the whole criminal scheme.

These circumstances distinguish the case at bar from those cited by appellant in support of his argument that there was no connection between the independent crimes and the offense for which appellant was convicted. Under these circumstances, it was not error to admit the testimony describing the circumstances surrounding appellant's flight even though such testimony showed the commission of other crimes. Grounds two through eleven, inclusive, are overruled.

The twelfth ground is that the admission of testimony that after appellant was apprehended it was discovered a police offi-

cer had been shot was prejudicially erroneous. The ground is predicated on the prohibition of showing an extraneous offense, especially since appellant was not shown to have perpetrated this unproven crime.

■ The testimony was connected to evidence of appellant's flight which ended in this resisted arrest. In proving flight, it is also relevant to show the accused's capture, Thames v. State, supra, including the circumstances surrounding the arrest. Jones v. State, 471 S.W.2d 413 (Tex.Cr. App.1971). By admitting these circumstances surrounding the arrest, the trial judge did not clearly abuse his discretion. The twelfth ground is overruled.

In the initial point, appellant asserts that the court erred in denying his motion for mistrial when the State elicited the testimony that appellant had spent time in different penitentiaries. The testimony referred to was included in the recounting of appellant's statements made to his captive audience at the Battle Mountain Lodge. Appellant contends that this testimony was elicited in flagrant violation of the court's order on his motion in limine to prohibit evidence of extraneous offenses.

Appellant's record reference to his motion in limine reflects that the court granted the motion as to appellant's prior convictions that had been set aside; however, this was not testimony of those prior convictions, but was testimony apparently admitted under the court's ruling that the State would be allowed to prove "intent and motive and anything involved in the flight." In this, we perceive no error.

■ The statements attributed to appellant, including his declaration about the times he had done in different penitentiaries, were uttered in the context of his intent to resist capture since "he didn't intend to leave there alive." In proving flight, it is also relevant to show the accused's capture, including his resistance to arrest. Thames v. State, supra. The evi-

dence is that appellant did indeed resist arrest. In showing resistance to arrest, the State may show that the accused made threats to resist any effort to arrest him. Martinez v. State, supra; Walker v. State, 74 Tex.Cr.R. 645, 169 S.W. 1156 (1914). In this context, the admission of the testimony was not reversible error. The first ground is overruled.

By his thirteenth ground, appellant claims it was error for the vendor to testify that he did not receive any money for the pistols he sold to appellant. The testimony was objected to "as being immaterial." The appellate objection is that it proved appellant committed an extraneous offense and the testimony was not admissible under any exception to the general rule.

■ The objection now made was not voiced at the trial; therefore, nothing is presented for review. Gondek v. State, 491 S.W.2d 676 (Tex.Cr.App.1973). Moreover, since the trial judge was never given the opportunity to rule on the objection now made, we decline the invitation to rule on it on appeal. Campbell v. State, 492 S. W.2d 956 (Tex.Cr.App.1973). The thirteenth ground is overruled.

Appellant's fourteenth ground of error is directed to the court's charge.

Five written objections were levelled at the court's charge. These objections were endorsed "sustained in part and overruled in part" by the trial judge. It is not possible to determine just which objections were sustained and which ones were not. The court's charge was not, however, responsive to the first four objections, so it would appear that the court sustained the fifth objection which read: "Defendant objects to the court's charge for the reason that it fails to instruct the Jury in the form of limiting charges to the effect that each offense other than the one charged in the indictment was admitted for whatever purposes they were and cannot be considered for any other purposes."

The charge found in the record contains the following:

"The defendant is on trial solely on the charge contained in the indictment. Any testimony before you in this case regarding commission by the defendant or any other person of offenses, if any, other than the offense, if any, alleged against the defendant in the indictment cannot be considered by you for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining flight of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment, and for no other purpose."

Appellant's complaint on appeal is that the charge failed to instruct the jury "that evidence as to extraneous offenses can only be considered in determining intent, identity or malice or for whatever reason the trial court admitted them in evidence *other than to show flight.*"

■ It is observed that it is not necessary to give a limiting instruction on an extraneous offense which constitutes a part of the res gestae of the offense for which an accused is on trial. "In other words, where the testimony is simply used to prove the case as res gestae, or to prove any fact that forms a part and parcel of the case on trial so as to show the defendant's guilt, it is not necessary to charge limiting the effect of such testimony." 31 Tex.Jur.2d, Instructions, Sec. 149, p. 725.

■ It would not appear that the court was required to give a limiting charge in the extraneous offenses under the circumstances of the instant case. Nevertheless, the court appears to have responded to appellant's written objection which was too broad and vague to meet the specificity requirements of Article 36.-14, Vernon's Ann.C.C.P., and certainly not sufficient to call the trial court's attention

to the matter now urged. While not expressing approval of the charge given, we cannot conclude that the appellant was injured and was deprived of a fair trial thereby. See Article 36.19, Vernon's Ann. C.C.P.

■ Grounds numbered fifteen through seventeen, inclusive, present appellant's complaint of hearsay testimony, and the eighteenth ground is a complaint about Mrs. Sackett's testimony for her feelings and conclusions. Except for the comments that the testimony which aggrieves him is set out on specified pages of the record, appellant does not otherwise identify such testimony. The mere reference to pages of the record does not sufficiently identify the testimony, the objections thereto and the court's rulings thereon to constitute a ground of error. Article 40.09, Sec. 9, Vernon's Ann.C.C.P.; Jackson v. State, 494 S.W.2d 854 (Tex.Cr.App.1973); Ortega v. State, 493 S.W.2d 828 (Tex.Cr.App. 1973). These grounds of error are overruled.

■ Assigning the reason that it was a comment on his failure to testify, appellant objected to the State's guilt-innocence stage jury argument that

"They could have put anyone on the stand they wanted to, to testify to anything . . . ."

The overruling of the objection is the basis of the twenty-first ground of error.

By candidly conceding that the comment was an indirect reference to the fact that he did not testify, appellant has destroyed the efficacy of his ground for, to constitute a prohibited comment, it is not sufficient that the language might be construed as an indirect allusion to the appellant's failure to testify; to offend, the language, as viewed· from the standpoint of the jury, must necessarily imply that appellant failed to testify. Jackson v. State, 454 S.W.2d 733 (Tex.Cr.App.1970).

Beyond that, however, a review of the complete argument makes it clear that the

quoted passage was not even an indirect reference to the fact that appellant chose not to testify. Instead, the comment was a minor portion of the State's reply to the observation made in appellant's argument that the State had not called complainant's twelve year old daughter as a witness. The comment was referenced to the State's suggestion that the daughter was available to the defense as a witness. The final ground is overruled.

No reversible error being presented, the judgment is affirmed.

Opinion approved by the Court.