## Jerry Sol EIKENHORST

### v.

### The STATE of Texas.

### No. C14–81–459CR.

Court of Appeals of Texas, Houston (14th Dist.).

June 3, 1982.

Ellis McCullough, Houston, for appellant.

James Brough, Houston, for appellee.

Before MILLER, MORSE and JAMES, JJ.

JAMES, Justice.

This appeal arises out of a conviction for aggravated robbery pursuant to Tex.Penal Code Ann. §§ 29.02 and 29.03 (Vernon 1974). The punishment, enhanced by two prior felony convictions, was assessed at life in the Texas Department of Corrections. We affirm.

In his first ground of error, appellant challenges the sufficiency of the evidence. He asserts that the record wholly fails to show the use of a deadly weapon while in the course of committing theft. We disagree.

The record reveals that at approximately 11:30 A.M. on August 29, 1980, the complainant went to a Fiesta Food Store in Houston, Texas to deliver some receipts, money and money orders she had collected on some of the store's bad checks. For her services, the complainant was paid a commission of $412 in cash. She placed this money inside her briefcase and walked out to the store's parking lot where she had

parked her husband's van. As she went to unlock the door, a man later identified as Steven Klatt came from behind and pushed the complainant inside. A struggle ensued but the complainant was overpowered. Klatt and appellant entered the van and the complainant was shoved to the back. Appellant displayed a knife to the complainant and told her that if she remained quiet, she would not get hurt. Appellant also told her that they were only going to use the van for a little while. The complainant was to later learn that these two individuals, with whom she would spend the next twenty-nine hours, had just escaped from a Fort Bend County jail.

The record reflects that during the struggle between the complainant and Klatt, her keys were jerked away from her and her purse was searched for weapons, money and credit cards. During this time, appellant had his knife by his leg and Klatt had a similar knife. These knives were of the kind usually seen in a kitchen with a blade about four inches in length. What followed was a nightmarish ordeal which the complainant had to endure until she was set free the next afternoon.

The first stop in appellant's excursion was an Exxon gas station off of Interstate Highway 10 in Houston, Texas. Klatt got out to get gas and appellant stayed in the car with the complainant. Although she had been hysterical and screaming, appellant told her to be quiet and look as though they were carrying on a conversation so that nothing would appear suspicious. While Klatt paid for the gas with the complainant's credit card, the knife appellant had displayed to her lay beside him on the seat.

Klatt drove the van through Beaumont and Vidor, Texas and then on to Louisiana. When they reached Lake Charles, Louisiana, Klatt and appellant stopped to buy food at a drive-in restaurant. The complainant testified that they used a roll of quarters her husband had left in the van to pay for the food. She testified that she was again ordered to be quiet and that appellant continued to have the knife in his possession. She was never left alone and was allowed to use the restroom only if appellant had control of the key.

While in Lake Charles, appellant and Klatt stopped at a Sears store and a drug store to buy themselves clothes and toiletry items. The complainant's Sears and Visa credit cards were used to pay for these items. The record further reflects that the complainant never gave either of these men permission to use the credit cards and that while these purchases were being made, appellant remained with her in the van at all times with his knife always visible and at his immediate disposal.

At about 8:30 P.M. on the night the complainant was accosted, the three arrived in Lafayette, Louisiana. They stopped at a Holiday Inn Hotel and Klatt went into the office to pay for a room. The clerk at the desk refused to accept the complainant's Visa credit card for payment because Klatt did not have a driver's license. Klatt came out to the van where appellant and the complainant were waiting and ordered the complainant inside. She was told to pose as Klatt's wife and to use her license for identification. The complainant was led into the office by Klatt who held a tight grip on her arm. The reception clerk testified that when she entered the office, the complainant's eyes looked as though she had been beaten or that she had been crying. The complainant testified that she knew she could not escape for fear she would be hurt.

In the hotel room, the complainant was raped twice by appellant. She testified that she was screaming and crying and begging him to stop but, "[H]is mind was made up." The record further shows that during both rapes, the knife was beside appellant on the table by the bed.

Prior to leaving the Holiday Inn, the complainant noticed that Klatt had ransacked the inside of the van and that the $412 in her briefcase was gone. Klatt then drove the van back to Lake Charles, Louisiana where they again stopped at a Sears store. There the complainant was told to buy appellant and his partner a police scanner with her Sears credit card and that she

"better not try anything." While she was signing for the purchase, both Klatt and appellant remained close at her side. She testified that she knew both were carrying their knives. The three then returned to the van where they proceeded on to Beaumont, Texas.

In Beaumont, appellant and Klatt first stopped at a Budget Rent-a-Car. The complainant testified that there they used either her Sears or Visa credit card to rent a red Thunderbird. Prior to setting her free to return to Houston in the van, Klatt and appellant stopped at a Joske's store where the complainant's credit card was used to buy Klatt and appellant more clothes. Finally at about 2:00 P.M. on August 30, 1979, the complainant was allowed to go. She was told to drive straight to Houston and to not stop for anything on the way. Appellant and Klatt followed her for a short while and then they disappeared. When the complainant arrived in Houston, her first stop was to the Sheriff's Department where, although hysterical, she related her story to the officials on duty.

■ Appellant asserts that "the record is completely silent as to any use or exhibition of a deadly weapon during the course of committing theft of any of the complainant's property." What appellant would require for a conviction for aggravated robbery is that the person committing the offense exhibit a deadly weapon exactly at the time the property is taken. We do not view this as the law. To the contrary, Tex.Penal Code Ann. § 29.03 provides that a person commits an offense if he commits robbery as defined in § 29.02, and he "uses or *exhibits* a deadly weapon." It does not further require that the exhibition of the weapon be at the exact time the property is taken. In fact, the phrase "in the course of committing theft" means "conduct that occurs *in an attempt to commit,* during the commission, or in immediate flight after the attempt or commission of theft." (emphasis ours) Tex.Penal Code Ann. § 29.01 (Vernon 1974).

The emphasized portion clearly sets out that an actual theft is not even required for the commission of the offense of aggravated robbery. Consequently, we fail to see how the cases cited by appellant serve to strengthen his position. In *Earl v. State,* 514 S.W.2d 273, 274 (Tex.Cr.App.1974), the court states: "Thus the actual commission of the offense of theft is not prerequisite to commission of a robbery, nor need the victim of the theft or attempted theft and the victim of the robbery be the same." Appellant relies also on *Bilbrey v. State,* 594 S.W.2d 754 (Tex.Cr.App.1980). There the issue before the court concerned not whether a weapon must be exhibited during the commission of the theft but whether the indictment requires an allegation that the accused "intentionally and knowingly exhibited the weapon." The authorities cited by appellant are thus not instructive on the issue before us.

■ In the instant case, the record is replete with the exhibition of knives both during the commission of the robbery of the complainant and during any attempt by appellant to commit theft. *See Arivette v. State,* 513 S.W.2d 857 (Tex.Cr.App.1974). Finding no merit in this ground of error, we overrule appellant's ground of error 1.

■ Appellant contends in his ground of error 2 that the trial court erred in its attempt to cumulate appellant's sentence. The basis for his contention is that when the trial court orally sentenced appellant on June 19, 1981, he omitted to give the cause number of appellant's prior conviction so as to comply with the rule of *Ex Parte Lewis,* 414 S.W.2d 682 (Tex.Cr.App.1967). In *Lewis,* the Court of Criminal Appeals held that an order of cumulation should give the following:

(a) the number of such prior conviction,

(b) the correct name of the Court in which the prior conviction was had,

(c) the date of the prior conviction,

(d) the term of years assessed in the prior case.

Appellant asserts the trial court's omission renders the cumulation order void. We disagree. The written sentence dated the same day as when the trial court gave the

oral sentence fully complies with the *Lewis* requirements. A cumulation order is sufficient if it will enable the prison authorities to know how long to detain the prisoner. *Ex Parte Daffern,* 162 Tex.Cr.R. 472, 286 S.W.2d 151 (1956); *See also Ex Parte F.M. March,* 423 S.W.2d 916 (Tex.Cr.App.1968). The cumulation order here adequately provides the prison officials with all the information they need in determining how long to detain appellant.

Appellant's ground of error 2 is overruled and the conviction is affirmed.