# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-09-00266-CR

**Fernando Muniz-Luna, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 63220, HONORABLE WILLIAM BACHUS JR., JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

The State charged Fernando Muniz-Luna with aggravated sexual assault stemming from an alleged incident of sexual contact with his twelve-year-old daughter D.M. *See* Tex. Penal Code Ann. § 22.021 (West Supp. 2009). After a jury found Muniz-Luna guilty, the trial court assessed punishment at 20 years' imprisonment. In three points of error on appeal, Muniz-Luna argues that the trial court erred in (1) allowing the outcry witness to describe in detail what the complainant had told her, (2) allowing improper bolstering of D.M.'s testimony, and (3) admitting evidence of other crimes, wrongs, or acts of the defendant and declining to give the jury a limiting instruction regarding those extraneous acts at the time of their admission. We affirm the judgment of the trial court.

## BACKGROUND

On May 27, 2008, Christin Rogers, an officer with Killeen Police Department, was called out to Liberty Hill Middle School to investigate a possible sexual assault.[1]  There, she interviewed D.M., who had been writing notes to her classmates that indicated that she had been sexually assaulted by her father.  Rogers, who was designated as an outcry witness by the State, testified at trial that she spoke to D.M. at the school.  During the conversation, D.M. stated that she had been home alone with her father, Muniz-Luna, on the previous day.  Around 5:30 p.m., D.M. had encountered her father watching a pornographic movie in the front room of their home.  D.M. sat down on a couch in the room and began to play a game on an electronic gaming device; Muniz-Luna continued to watch the video.  Approximately 90 minutes later, Muniz-Luna turned off the video, and the two of them ate dinner and watched a television program together before D.M. went upstairs to go to bed.

According to Rogers's testimony, D.M. stated that as she was getting ready for bed, her father entered her room and asked her to rub his penis.  Though she initially resisted, Muniz-Luna insisted, and D.M. eventually complied, on the condition that he would not ask her to do so again.  Muniz-Luna then asked D.M. to suck on his penis, first for "just a second," then for 30 seconds.  Again, after initially refusing, D.M. complied.  D.M. then left the bedroom and went to the bathroom to brush her teeth.  Muniz-Luna followed her, asking D.M. to continue to rub his penis to "help him get his sperm out."  She again indicated that she would comply if he did not ask her to do so again in the future.  She completed the act, and after her father ejaculated into the toilet, she ran back to her bedroom and went to sleep.

---

[1] The facts recited herein are from the testimony and exhibits admitted at trial.

The day after D.M. spoke to Rogers—two days after the incident—Detective Ronnie Supak of the Killeen Police Department monitored an interview between D.M. and a forensic interviewer at the Children's Advocacy Center. Supak observed the interview via closed-circuit camera. At trial, Supak testified over objection from the defense that D.M.'s account of the May 26th incident during the interview was consistent with the statement she made to Rogers and with the report of the incident compiled by the Department of Child and Protective Services.

D.M. also testified at trial about the May 26th incident. She stated that her father had asked her for "special hand" on the night in question, and stated that she understood the term as a request that she rub his penis, as he had used the same terminology before. When asked whether he had previously asked for "special hand" more than once, more than ten times, or more than 100 times, D.M. answered, "More than once." D.M. testified that her father had also asked for "special kiss" on the night in question, which she understood to indicate oral sex, though he had never used the term before. D.M. further testified that her father had on prior occasions touched her skin "on [her] boobs and under her pants" and "inside" her under her panties.

At the conclusion of trial, the jury found Muniz-Luna guilty of aggravated sexual assault. *See* Tex. Penal Code § 22.021. The trial court assessed punishment at 20 years' imprisonment, and this appeal followed.

## STANDARD OF REVIEW

We review a trial court's ruling under the rules of evidence for an abuse of discretion. *Page v. State*, 213 S.W.3d 332, 337 (Tex. Crim. App. 2006). We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's judgment if it

3

lies within the zone of reasonable disagreement. *Rodgers v. State*, 205 S.W.3d 525, 529 (Tex. Crim. App. 2006).

## DISCUSSION

*Outcry Witness*

In his first point of error on appeal, Muniz-Luna argues that the trial court erred in allowing Rogers, the outcry witness, to testify as to the content of D.M.'s outcry statement. Article 38.072 of the code of criminal procedure creates an exception to the hearsay rule for "outcry" statements made by a child abuse victim describing the alleged offense, if the witness is the first adult to whom the child made such statements. Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 2009); *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990); *Fleming v. State*, 819 S.W.2d 237 (Tex. App.—Austin 1991, pet. ref'd). For an outcry statement to be admissible under article 38.072, the statement must describe the offense in some discernible manner and must consist of more than a general allusion to a potential occurrence of sexual abuse. *See Garcia*, 792 S.W.2d at 91.

In this case, Rogers testified regarding D.M.'s account of an incident during which Muniz-Luna asked D.M. to rub and suck on his penis. These statements fall squarely within the hearsay exception carved out by article 38.072, which applies to outcry statements that "describe the alleged offense." *See* Tex. Code Crim. Proc. Ann. art. 38.072.[2]

---

[2] While Muniz-Luna cites to article 38.07 of the code of criminal procedure for the proposition that a "corroborating statement" was not required in this case, article 38.07 does not govern the admissibility of outcry statements. *See* Tex. Code Crim. Proc. Ann. art. 38.07 (West 2005).

4

Muniz-Luna contends that an outcry witness may only testify that an outcry statement was made and relate the basic nature of the complaint, and that any further testimony regarding the details of the alleged offense constitutes inadmissible hearsay.[3] However, as outcry statements must rise above the level of general allusions to sexual abuse, *see Garcia*, 792 S.W.2d at 91, the inclusion of some detail regarding the alleged offense is not only permissible but required for admissibility of the outcry statement. *See Carty v. State*, 178 S.W.3d 297, 307 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (holding outcry statement admissible because "[i]t was *detailed* and in a 'discernable manner describes the alleged offense'") (quoting *Garcia*, 792 S.W.2d at 91) (emphasis added); *Marquez v. State*, 165 S.W.3d 741, 747 (Tex. App.—San Antonio 2005, pet. ref'd) (holding that outcry statement was admissible because it described specific sexual acts). Accordingly, Muniz-Luna's first point of error is overruled.

### *Bolstering*

In his second point of error on appeal, Muniz-Luna argues that the trial court erred in overruling the defense's objection to bolstering of D.M.'s testimony. Muniz-Luna's argument focuses on Supak's testimony that D.M. was consistent in describing the events of the night in question in each of three statements—her statement to Rogers, her statement to the interviewer at the Children's Advocacy Center, and her statement to the Department of Family and Protective

---

[3] Muniz-Luna does not challenge any of the other requirements of article 38.072, such as notice, the age of the child, whether the outcry witness was the first person that the child spoke to, or the availability of the child to testify. *See id.* art. 38.072 (West Supp. 2009).

Services. At trial, Muniz-Luna's counsel objected to the admission of this testimony, stating, "That's an attempt to bolster the witness."[4]

Bolstering occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party. *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993). Texas courts have emphasized that bolstering only applies when evidence is improperly used by a party to add credence or weight to some *earlier* unimpeached piece of evidence. *Valcarcel v. State*, 765 S.W.2d 412, 415 (Tex. Crim. App. 1989) (citing *Guerra v. State*, 771 S.W.2d 453 (Tex. Crim. App. 1988)). As Supak testified before D.M. did, his testimony could not have bolstered hers. *See id.*; *Hyde v. State*, 869 S.W.2d 660, 663 (Tex. App.—Beaumont 1994, no pet.) ("[I]mproper 'bolstering' does not occur when the alleged 'bolstering' takes place before the unimpeached witness has had a chance to testify.").[5] Accordingly, Muniz-Luna's second point of error is overruled.

---

[4] There is some question as to whether a "bolstering" objection preserves error. While "bolstering" was a proper objection in Texas courts prior to the adoption of the rules of evidence, the rules themselves contain no specific provision regarding bolstering. *Cohn v. State*, 849 S.W.2d 817, 821 (Tex. Crim. App. 1993) (Campbell, J., concurring). Concurring in *Cohn*, Judge Campbell argued that a "bolstering" objection should no longer be recognized, as "an objection that certain evidence is 'bolstering' in no way invokes the Rules or informs the trial court of the basis for exclusion under the Rules." *Id.*; *see also Rivas v. State*, 275 S.W.3d 880, 887 (Tex. Crim. App. 2009) (noting that "[m]any appellate courts have cited the *Cohn* concurrence as authority to abandon 'bolstering' as a valid objection to preserve error for review"). However, given our disposition of this issue, we need not address the continuing vitality of a "bolstering" objection in Texas.

[5] To the extent that the objection can be construed as an objection to a prior consistent statement under Rule 613(c) of the rules of evidence, the same reasoning applies. Under Rule 613, "a bolstering objection is appropriately made to a prior consistent statement introduced *after* the witness's in-court testimony." *West v. State*, No. 03-05-00371-CR, 2008 Tex. App. LEXIS 8599, at *15 (Tex. App.—Austin Nov. 14, 2008, pet. ref'd) (op. on reh'g) (emphasis added).

6

***Other Crimes, Wrongs, or Acts***

In his third point of error, Muniz-Luna argues that the trial court impermissibly introduced evidence of other crimes, wrongs, or acts during D.M.'s testimony, and failed to give the jury a limiting instruction at the time that the evidence was admitted.

*Admissibility*

Muniz-Luna contends that the trial court erred in admitting D.M.'s testimony regarding prior occasions on which Muniz-Luna asked D.M. to rub his penis, watched pornography in D.M.'s presence, and touched D.M.'s breasts and genitals. Under rule 404(b), evidence of other crimes, wrongs, or bad acts is inadmissible if it is offered to prove the character of a person in order to show action in conformity therewith, though it may be admissible for other purposes. Tex. R. Evid. 404(b). However, Article 38.37 of the code of criminal procedure provides that, notwithstanding rule 404, evidence of other crimes, wrongs, or bad acts committed by a defendant against a child who is the victim of the alleged sexual assault "shall be admitted for its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child." Tex. Code Crim. Proc. Ann. art. 38.37 (West Supp. 2009); *Poole v. State*, 974 S.W.2d 892, 897 (Tex. App.—Austin 1998, pet. ref'd); *see also Ernst v. State*, 971 S.W.2d 698, 700 (Tex. App.—Austin 1998, no pet.) (noting authority that observes that wording of article 38.37 is "strongly tipped in favor of admissibility").

In this case, testimony that Muniz-Luna had previously asked D.M. to rub his penis, watched pornography in D.M.'s presence, and touched D.M.'s breasts and genitals all relate to the prior sexual nature of their relationship. Further, the fact that Muniz-Luna had previously asked

7

D.M. for "special hand" when requesting she rub his penis is relevant to his state of mind on the date of the alleged incident when he again asked her for "special hand." *See, e.g., Allen v. State*, No. 03-05-00755-CR, 2007 Tex. App. LEXIS 549, at *3 (Tex. App.—Austin Jan. 23, 2007, no pet.) (mem. op., not designated for publication) (evidence of prior abuse and "bizarre punishments" admissible under article 38.37 to show defendant's "intent and ability to commit the charged offense and to explain the complainant's acquiescence to appellant's abuse"). Accordingly, we conclude that the trial court did not abuse its discretion in determining the evidence was relevant.[6]

*Contemporaneous Limiting Instruction*

Muniz-Luna also argues that the trial court erred in failing to give a limiting instruction to the jury at the time the evidence of extraneous offenses was admitted. Rule of evidence 105(a) provides that "[w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." Tex. R. Evid. 105(a). When evidence is admitted for a limited purpose, the trial court must, upon request, provide a midtrial limiting instruction, as failing to provide the instruction may improperly result in the jury forming a negative inference about the defendant. *Jackson v. State*, 992 S.W.2d 469, 477 (Tex. Crim. App. 1999). This improper inference, once formed, cannot easily be cured by an instruction in the jury charge. *Id.*

---

[6] While evidence admissible under article 38.37 may be excluded under rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, Muniz-Luna did not raise that issue at trial or on appeal. *See* Tex. R. Evid. 403; *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (holding that appellant must make specific objection at trial to preserve appellate issue based on balancing under rule 403).

The burden is on the defendant alone to request a limiting instruction. *Walker v. State*, 300 S.W.3d 836, 849 (Tex. App.—Fort Worth 2009, pet. ref'd). If the defendant fails to request a limiting instruction at the introduction of the evidence, the defendant does not preserve error and the trial court is not required to provide an instruction. *Id.* The request for a limiting instruction must be sufficiently specific to "inform the trial court as to what limitation should be placed upon the evidence." *Puente v. State*, 888 S.W.2d 521, 528 (Tex. App.—San Antonio 1994, no pet.) (citing *Burks v. State*, 876 S.W.2d 877 (Tex. Crim. App. 1994) (holding that to preserve error, counsel must "let the trial judge know what he wants, why he thinks himself entitled to it, and [] do so clearly enough for the judge to understand him")).

In this case, Muniz-Luna's trial counsel first discussed D.M.'s testimony regarding extraneous offenses with the court at a conference outside of the presence of the jury. After trial counsel objected that the acts should not be admitted under rule 404(b) "to show character or character conformity or anything other than certain limited purposes that the law provides," counsel and the court engaged in the following exchange:

| | |
|---|---|
| COUNSEL: | If the Court allows this testimony, we would ask the Court to give a limiting instruction as to the burden of the admission of this testimony. |
| THE COURT: | All right. |
| COUNSEL: | But we do object to it. |
| THE COURT: | Sure. I'm going to overrule your objection. I'm going to allow it in. But when we do the Charge, I would give for [sic] a limiting instruction. |
| COUNSEL: | Your Honor, I would ask for one at the time of the evidence. |

9

THE COURT:        I'm going to deny that.

When the evidence was offered before the jury, counsel stated, "Your Honor, I'm going to object as we objected outside the presence of [the jury] as this testimony will not be allowed." After the trial court overruled the objection, counsel stated, "And, again, we would ask for a limiting instruction at this time, Your Honor." This request was also denied.

Our review of the trial transcript indicates that Muniz-Luna did not properly request a limiting instruction regarding the purposes for which the extraneous-offense evidence could be used. Outside of the presence of the jury, trial counsel asked for a "limiting instruction as to the burden of admission of the testimony." Such an instruction refers to the State's burden of proof, for which a contemporaneous instruction is not required. *See Jackson*, 992 S.W.2d at 477 (stating that "the rationale for giving a contemporaneous instruction [when admitting evidence of extraneous offenses] does not apply to burden of proof issues").[7] Further, when the jury returned, counsel stated only that, "again, we would ask for a limiting instruction at this time." This statement refers back to the prior request for an instruction on the burden of proof. Even if we were to evaluate the request on its own, it is not sufficiently specific to inform the trial court as what instruction the defendant sought. *See Puente*, 888 S.W.2d at 528; *see also Ellis v. State*, 241 S.W.3d 172, 179 (Tex.

---

[7] Muniz-Luna's brief also indicates that the trial court erred in failing to give an instruction on the burden of proof at the time that the evidence of the extraneous offenses was admitted. While this issue is not properly before us on appeal, *see* Tex. R. App. P. 38 (briefing requirements), we note that the analysis in *Jackson* serves to overrule any challenge regarding the necessity of a contemporaneous instruction on the burden of proof. 992 S.W.2d 469, 477 (Tex. Crim. App. 1999) (explaining that burden of proof instructions may be given for the first time in jury charge as jurors do not encounter burden of proof questions until all evidence has been taken).

10

App.—Eastland 2007, pet. ref'd) ("A request for a limiting instruction must inform the trial court as to what limitations should be placed upon the evidence.").

Further, even taking the content of counsel's objection into consideration, counsel objected to the admission of the evidence solely under rule 404(b). The evidence, however, was admissible under article 38.37, as explained by the State outside of the presence of the jury. Although the defendant is entitled to a limiting instruction regarding the purposes for which 38.37 offenses may be considered during the guilt/innocence phase of trial, *see Graves v. State*, 176 S.W.3d 422, 433 (Tex. App.—Houston [1st Dist.] 2004, no pet.), such an instruction was never specifically requested in this case, as defense counsel never discussed or alluded to article 38.37 when objecting. Accordingly, the request for a contemporaneous instruction was not properly preserved. *See Torres v. State*, Nos. 05-96-00498-CR & 05-96-00499-CR, 1998 Tex. App. LEXIS 4635, at *7-8 (Tex. App.—Dallas July 30, 1998, no pet.) (mem. op., not designated for publication) (holding that appellant had not preserved request for limiting instruction when evidence was admissible under article 38.37 and counsel had only objected and requested instruction under rule 404(b)).[8]

Even if this issue had been preserved for our review, Muniz-Luna's argument does not survive harm analysis. A trial court's failure to give a limiting instruction as to extraneous

---

[8] The State also argues that no limiting instruction was required because the extraneous offense evidence was used to prove a "main fact" in the case. The trial court is not required to give limiting instructions on an extraneous offense which involves a main fact and is accordingly "part and parcel of and closely interwoven with the offense for which the accused is on trial." *Navarro v. State*, 863 S.W.2d 191, 199 (Tex. App.—Austin 1993, pet. ref'd) (citing *Arivette v. State*, 513 S.W.2d 857, 864 (Tex. Crim. App. 1974)). However, because we conclude that error was not properly preserved, we need not address this argument.

offense evidence does not constitute constitutional error. *See Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996) (holding harmless error analysis is applicable to failure to give contemporaneous limiting instruction); *Rankin v. State*, 995 S.W.2d 210, 215 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (noting it was non-constitutional error when trial court gave limiting instruction to jury when jury was charged and not when extraneous offense testimony was admitted). The rules of appellate procedure provide that any error other than constitutional error "that does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b). Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have a fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

In determining whether the failure to give a limiting instruction regarding article 38.37 evidence was harmless, the court of appeals in *Rankin*, dealing with the harm issue on remand, noted that "the trial court submitted a proper limiting instruction in the jury charge, that the jury had been instructed not to consider the evidence for purposes of character conformity, and that there was no evidence to show the jury formed an opinion prior to the time it began its deliberation" in finding the error harmless. *Lemmons v. State*, 75 S.W.3d 513, 525 (Tex. App.—San Antonio 2002, pet. ref'd) (summarizing *Rankin*, 995 S.W.2d at 215). Other courts have also considered the length of time between the failure to give the contemporaneous instruction and the reading of the charge. *See id.* (noting "the short amount of time that passed from the introduction of the extraneous-offense evidence to the trial court's reading of the instruction to the jury" in concluding that trial court's error did not affect substantial right).

12

In this case, the trial court instructed the jury in the charge that any evidence of extraneous offenses could only be considered "in determining the intent, knowledge, plan, preparation, motive, absence of mistake or accident of the defendant, . . . and for no other purpose."[9] D.M. was the last witness to testify during the State's case in chief, and the limiting instruction in the charge was read to the jury on the morning following D.M.'s testimony. Further, the record presents no other indication suggesting that the jury formed an opinion regarding Muniz-Luna's character or conformity prior to the reading of the jury charge, and we note that the State did not rely heavily on the extraneous acts during closing. Based on our analysis of the record, we have a fair assurance that the error did not influence the jury or had but a slight effect, and accordingly we conclude that any error by the trial court in failing to give a contemporaneous limiting instruction did not affect Muniz-Luna's substantial rights.

Accordingly, Muniz-Luna's third point of error is overruled.

---

[9] We note that this instruction unduly limits consideration of extraneous acts involving Muniz-Luna's prior sexual contact with D.M. and his watching of pornography in her presence. As these acts are admissible under article 38.37, they may also be considered with regard to the state of mind of the defendant and the child and the previous and subsequent relationship between the defendant and the child. Tex. Code Crim. Proc. Ann. art. 38.37 (West Supp. 2009); *see Brantley v. State*, 48 S.W.3d 318, 323 (Tex. App.—Waco 2001, pet. ref'd) (holding that limiting instruction in charge that did not include language authorizing consideration of acts for purposes enumerated in article 38.37 "unduly limited the use of the damaging evidence").

## CONCLUSION

Finding no reversible error, we affirm the judgment of the trial court.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   September 30, 2010

Do Not Publish